IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| King Grant-Davis, ) | Civil Case No. 2:15-cv-02676-PMD-MGB |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| Board of Trustees of Charleston County ) | |
| Public Library; County of Charleston, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The Plaintiff, appearing *pro se*, filed this action under 42 U.S.C. § 1983 and 42 U.S.C. § 12132 (the "Americans with Disabilities Act" or "ADA") on July 6, 2015. (Dkt. No. 1.) This matter has been referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B). The Defendants have jointly filed a Motion to Dismiss in lieu of Answer pursuant to Rule (12)(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 14.) The Plaintiff filed a response to the Defendants' motion on November 5, 2015. (Dkt. No. 18.)

## **ALLEGED FACTS**[1]

Prior to the events that led to the claims in this case, the Plaintiff alleges that he was previously banned from the Charleston County Public Library ("the library") in 2012 by the executive director, Douglas Henderson ("Henderson"). Subsequently, the South Carolina General Assembly overrode the Governor's veto and passed S.C. Code § 16-11-625 which codified the trespass notice procedure in public libraries. Following the passage, the Board of

---

[1] In a motion to dismiss the court must accept the Plaintiff's alleged facts as true and view them in a light most favorable to the Plaintiff. *Brooks v. City of Winston-Salem, N.C.,* 85 F.3d 178, 181 (4th Cir. 1996). All facts contained in the ALLEGED FACTS section are taken from the Complaint (Dkt. No. 1) unless otherwise cited.

Trustees of Charleston County Library ("the Board") voted to allow the Plaintiff access to the library once again. The Plaintiff alleges that he suffers from post-traumatic stress syndrome, major depression, and anti-social personality disorder. The Plaintiff undergoes mental health treatment, and he first informed the library of his mental conditions in 2005.

The Plaintiff alleges that he began visiting the library again in October of 2014. Beginning around that time, Darlene Jackson ("Jackson"), the library manager, began to act in concert with Henderson and other library staff in the reference section and South Carolina Room to "manufacture false misconduct accusations against plaintiff, so they could have plaintiff barred from access to the libraries permanently." (Dkt. No. 1 at 6.)

The Plaintiff alleges that on March 31, 2015, he entered the library to have a document relating to litigation in state court notarized. He spoke with library supervisor Marianne Cawley ("Cawley"). Cawley expressed concern about notarizing the document, causing the Plaintiff to be delayed. Cawley apparently called Jackson, who appeared shortly thereafter. Cawley called the Clerk of Court's office about the document. Cawley then notarized the document. Jackson remained present.

The Plaintiff alleges that he went to the library on May 13, 2015 after 4:00 p.m. and went to the reference section. There he requested a notary. Plaintiff was referred to the South Carolina Room because no notary was available in the reference section. In the South Carlolina Room, the Plaintiff was referred to a younger staff member who was a notary public. The younger staff member was helping someone with the microfiche machine. The Plaintiff asked the younger staff member "how long will it be," and she ignored him. (Dkt. No. 1 at 8.) The Plaintiff was in a hurry because he needed to get his documents notarized, copied, and filed at the courthouse by 5:00 p.m. The Plaintiff twice more asked the younger staff member how long

it would be. She responded, "It will be awhile." (*Id.*) The Plaintiff then returned to the reference section where someone was available to notarize his documents. He then copied and assembled his documents. Before he could leave he was approached by Jackson. She did not say anything, but Plaintiff told her that he had asked the younger staff member how long she would be and that it was his right to ask. Jackson told the Plaintiff to come see her next time he came to the library. Two officers were with Jackson. One of them told the Plaintiff to "bring down the tone of your voice!" (Dkt. No. 1 at 9.) The Plaintiff responded by saying "What is this, white supremacy? [Jackson] already told me to see her next time I come to the library. Sir, I have PTSD, major depression, and anti-social personality systoms [sic]." (*Id.*)

The Plaintiff alleges he returned to the library to see Jackson on May 14, 2015. The Plaintiff presented his mental health records to Jackson. Jackson then served the Plaintiff with a trespass warning not allowing him to come back to the library. The Plaintiff alleges that he had always acted appropriately in the library and was courteous to library staff. On May 19, 2015, the Plaintiff wrote a letter to the Board appealing his trespass notice and attached his mental health records.

The Plaintiff's appeal before the Board was heard on May 26, 2015. The Plaintiff received notice of the hearing approximately fifteen minutes before the appeal and was unable to attend. The Board upheld the trespass notice. The Plaintiff wrote a letter the following day explaining why he missed the appeal. On June 12, 2015, the Plaintiff received a letter informing him the Board had agreed to rehear his appeal on June 23, 2015. At the June 23, 2015 hearing, the Plaintiff was allowed to make a three minute statement to the Board. The Board then unanimously voted to uphold the trespass notice. The Plaintiff then asked the Board what future access he would have to the library, and he was ignored. Jackson and Henderson were present at

the June 23, 2015 hearing. The Plaintiff alleges that Jackson already knew the result of the hearing before it took place and that she was seated with police officers to escort the Plaintiff out of the hearing following his appeal.

## STANDARD OF REVIEW

The Defendants' motion to dismiss is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On a 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). For purposes of a motion to dismiss, the district court must "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, while the court must draw all reasonable inferences in favor of the plaintiff, it need not accept the "legal conclusions drawn from the facts, . . .unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano*, 521 F.3d at 298).

## ANALYSIS

The Plaintiff seeks relief under the ADA and 42 U.S.C. §1983. In their Motion to Dismiss, the Defendants argue that the Plaintiff has failed to state a claim upon which relief may be granted, that the Defendants are immune from suit under the Eleventh Amendment, and that the Defendants are protected under the doctrine of qualified immunity. (Dkt. No. 14.)

1. ADA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C § 12132. The Fourth Circuit has held that to state a claim under section 12132, "a plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999) (citing *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995)).

The Plaintiff has sufficiently pled the three requirements in *Baird* to survive the Defendants' motion to dismiss. The Plaintiff alleges he suffers from PTSD, depression, and anti-social personality disorder. These conditions may qualify as a disability under the ADA. *See Baird*, 192 F.3d at 467 (finding that parties did not dispute that depression may qualify as a disability). The Plaintiff alleges he always acted appropriately in the library and should not have been issued a trespass warning. (Dkt. No. 1 at 9.) The Complaint does not provide any other reasons the Plaintiff would not have been qualified to use the library. The Plaintiff alleges that he was targeted by Jackson and Henderson to be banned from the library because of his mental

health disabilities. (Dkt. No. 1 at 12.)  The facts alleged by the Plaintiff are sufficient to state a claim under section 12132 of the ADA.

    2. Section 1983 Claims

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

The Plaintiff alleges section 1983 claims based on his constitutional rights guaranteed by the First Amendment, the equal protection clause, and right to due process. (Dkt. No. 1 at 13.) The Plaintiff has alleged sufficient facts that he has been deprived of his constitutional rights. Courts within the Fourth Circuit and across the country have held that individuals have a protected First Amendment right to access public libraries.  *See Miller v. Nw. Region Library Bd.*, 348 F. Supp. 2d 563, 570 (M.D.N.C. 2004); *Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012); *Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992); *Neinast v. Board of Trustees of the Columbus Metropolitan Library*, 346 F.3d 585, 591 (6th Cir. 2003); *see also Armstrong v. District of Columbia Public Library*, 154 F.Supp.2d 67, 75 (D.D.C.2001). The Plaintiff has sufficiently alleged that his First Amendment right to access information was violated.

Similarly, the Plaintiff has alleged sufficient facts to establish that his constitutional rights under the Equal Protection Clause of the Fourteenth Amendment have been violated. "The Equal Protection Clause prohibits state actors from subjecting individuals with disabilities

to treatment that lacks any rational relationship to a legitimate state interest." *Lewis v. N. Carolina Agr. & Tech. State Univ.*, No. 1:09-CV-724, 2010 WL 1630814, at *2 n.4 (M.D.N.C. Apr. 21, 2010) (citing *Brown v. North Carolina Div. of Motor Vehicles*, 166 F.3d 698, 706–07 (4th Cir.1999); *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1267 (4th Cir.1995)). "[F]ederal law prohibits discrimination based on disability (via the ADA and the Equal Protection Clause of the Fourteenth Amendment…) and…[if the alleged conduct was committed by a person acting under color of state law], Section 1983 also represents a possible basis by which Plaintiff might proceed." *Id.* The Plaintiff alleges that he was prevented from accessing the library because of his mental disabilities. (Dkt. No. 1 at 12.)  The Plaintiff's allegations are sufficient to state a claim that his rights under the Equal Protection Clause have been violated.

The Plaintiff has alleged sufficient facts to establish that his due process rights have been violated.  The Fourteenth Amendment requires that a deprivation of a specific liberty or property interest must only be done through the due process of law. U.S. Const. amend. XIV; *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972). As discussed *supra*, the Plaintiff has a First Amendment right to receive information through access to the public library and has alleged sufficient facts that he was deprived of that right.  Therefore the court turns to whether the Plaintiff was afforded due process.

The Due Process Clause requires "at least" that an individual be given notice of the charge or proceeding against him and that he be given an opportunity to present "his side of the story" to the appropriate authority. *Goss v. Lopez*, 419 U.S. 565, 581 (1975).  The Plaintiff has alleged that he was given the trespass warning without any cause.  The Plaintiff then appealed the warning.  The Plaintiff had notice of the proceeding as the Board allowed him a second hearing after he missed the first hearing.  The Plaintiff was given an opportunity to address the

Board prior to making their decision. However the Plaintiff alleges that Jackson was at the hearing with police officers ready to escort him out because she knew that he would lose the hearing. (Dkt. No. 1 at 11.)  He alleges he was given only three minutes to present his "side of the story."  The Plaintiff has alleged sufficient facts to state a claim the he was not afforded sufficient due process.

Having determined that the Plaintiff has alleged sufficient facts to establish his First Amendment, Equal Protection Clause, and Due Process Clause rights were violated, the court must determine if "the conduct complained of was committed by a person acting under color of state law." *Dowe*, 145 F.3d at 658.  The Complaint contains allegations that the Board upheld the Plaintiff's trespass notice and deprived his access to the library.[2]  As to the County of Charleston ("the County"), the Plaintiff never mentions the County in his Complaint outside of the caption. Municipalities are "only liable under section 1983 if it causes such a deprivation through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91, (1978)).  The Plaintiff has not alleged any facts against the County as to how it caused the deprivations in any way.  The Complaint does not contain any allegations concerning any policies or customs maintained by the County.  This court finds that the Complaint fails to allege sufficient facts to state a claim under section 1983 against the County.[3]

  3.  Eleventh Amendment Immunity

---

[2] The Board has not raised the issue in its Motion to Dismiss that it is not a person under § 1983.

[3] To the extent the Plaintiff is attempting to assert the County is liable under a theory of vicarious liability or *respondeat superior*, such theories are not viable under section 1983. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-29 (4th Cir. 1977); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").

The Defendants argue that they are immune under the Eleventh Amendment. (Dkt. No. 14.) The Eleventh Amendment provides immunity to the states and the "arms" of the states, not municipalities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 n.7 (1989). The Plaintiff is suing the County and the Board. The County is a municipality and not immune under the Eleventh Amendment. *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (holding "Eleventh Amendment immunity does not extend to counties and similar municipal corporations.") It is not clear from the Complaint whether the Board is an arm of the state or the County. Therefore dismissing the Board under the Eleventh Amendment is premature at this time. Even if the Board is an arm of the state, as to the ADA claims, Congress "clearly and unambiguously" abrogated the State's Eleventh Amendment immunity under the ADA. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 484 (4th Cir. 2005). This court does not find immunity under the Eleventh Amendment to be available to the County and does not have enough information to determine if it applies to the Board.

    4. Qualified Immunity

The Defendants argue that "[t]o the extent that the Plaintiff has articulated any claims against Charleston County employees, Darlene Jackson, Douglas Henderson, Marianne Cawley, Cynthia Bledsoe, or individual members of the Charleston County Library Board of Trustees," they are entitled to qualified immunity. (Dkt. No. 14.) The Plaintiff has not asserted claims against any of those persons. Qualified immunity is not available to government entities in their official capacity. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). Qualified immunity does not apply to either Defendant in the case at bar.

## **RECOMMENDATION**

Accordingly, the Magistrate Judge **RECOMMENDS** that the Defendants' Motion to Dismiss in lieu of Answer (Dkt. No. 14) be **GRANTED** as to the Plaintiff's section 1983 claims against the County of Charleston. The undersigned **RECOMMENDS** the same be **DENIED** as to the Plaintiff's ADA claims against the Board of Trustees of Charleston County Library and the County of Charleston and the Plaintiff's section 1983 claims against the Board of Trustees of Charleston County Library.[4]

**IT IS SO RECOMMENDED.**

March 7, 2016

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[4] The Defendants raise the South Carolina Tort Claims Act, S.C. Code 15-78-10 et seq., as a defense to any state law claims brought by the Plaintiff. The Complaint does not appear to bring any claims under state law. (*See* Dkt. No. 1.) Additionally, the Plaintiff confirms he seeks relief under the ADA and section 1983 in his Response to Motion to Dismiss. (Dkt. No. 18.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).